UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| REY REY PRODUCE SFO, INC., | No. C-05-4712 JSW (EMC) |
| Plaintiff, | |
| v. | **REPORT AND RECOMMENDATION RE PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT** |
| FELIMON MEDINA, *et al.*, | |
| Defendants. | **(Docket No. 12)** |
| _____/ | |

Plaintiff Rey Rey Produce SFO, Inc. ("Rey Rey") has moved for default judgment against Defendant Felimon Medina, an individual doing business as Rosita's. On May 22, 2006, Judge White referred Rey Rey's motion to the undersigned for a report and recommendation. *See* Docket No. 19. Having considered all of the papers and evidence submitted therewith, the Court hereby recommends that the motion for default judgment be **GRANTED**.

### I. FACTUAL & PROCEDURAL BACKGROUND

In its complaint, Rey Rey alleges the following facts. In a series of transactions taking place between April 1, 2005, and June 8, 2005, Rey Rey sold and shipped perishable agricultural commodities to Mr. Medina at his request for which Mr. Medina agreed to pay Rey Rey $23,801. *See* Compl. ¶ 9. At the time of each transaction, Rey Rey forwarded an invoice to Mr. Medina which set forth the amount owed for the purchase of the commodities. *See* Compl. ¶ 10. Mr. Medina, however, failed to pay the amounts due and owing under the invoices; in fact, "no part of those sums due and owing has been paid." Compl. ¶ 11.

1   On November 17, 2005, Rey Rey filed suit against Mr. Medina (as well as another
2   individual), raising claims for (1) breach of contract, (2) enforcement of statutory trust provisions
3   under the Perishable Agricultural Commodities Act ("PACA"), (3) violation of PACA for failure to
4   account and pay promptly, and (4) declaratory relief.  Mr. Medina did not respond to the complaint.
5   Accordingly, on February 10, 2006, Rey Rey asked that default be entered against Mr. Medina.  *See*
6   Docket No. 7.  Default was entered by the Clerk of the Court on February 13, 2006.  *See* Docket No.
7   10.  Rey Rey then moved for default judgment against Mr. Medina.

## II.     DISCUSSION

A.     Adequacy of Service of Process

In deciding whether to grant or deny a default judgment, a court must first "assess the adequacy of the service of process on the party against whom default is requested." *Board of Trustees of the N. Cal. Sheet Metal Workers v. Peters*, No. C-00-0395 VRW, 2000 U.S. Dist. LEXIS 19065, at *2 (N.D. Cal. Jan. 2, 2001).

Rey Rey has submitted a proof of service which indicates that, on January 3, 2006, the summons and complaint were served on Mr. Medina by substitute service pursuant to the California Code of Civil Procedure.  *See* Docket No. 5.  Under the Federal Rules of Civil Procedure, it was permissible for Rey Rey to serve Mr. Medina pursuant to state law.  *See* Fed. R. Civ. P. 4(e)(1) (allowing for service "pursuant to the law of the state in which the district court is located, or in which service is effected, for the service of a summons upon the defendant in an action brought in the courts of general jurisdiction of the State").  Furthermore, based on the proof of service, it appears that service on Mr. Medina was made in compliance with California law.  The proof of service indicates that four attempts at personal delivery were made before resort to substitute service.  *See* Cal. Code Civ. P. § 415.20(b) (requiring that personal delivery be attempted with "reasonable diligence" before substitute service may be employed).  Substitute service was effected by (1) leaving a copy of the summons and complaint at Mr. Medina's dwelling house, usual place of abode, or usual place of business in the presence of a competent member of the household at least 18 years of age (*i.e.*, Bernarda Chavez, tenant), who was informed of the general nature of the papers and (2) mailing (by first-class mail, postage prepaid) copies to Mr. Medina at the same place.

Because it appears that Mr. Medina was properly served with a copy of the summons and complaint pursuant to the California Code of Civil Procedure, the Court now turns to the substantive issue of whether default judgment should be granted.

B.Default Judgment and *Eitel* Factors

After entry of a default, a court may grant a default judgment on the merits of the case. *See* Fed. R. Civ. P. 55. Under Federal Rule of Civil Procedure 55, a court may not enter a default judgment against an unrepresented minor, an incompetent person, or a person in military service. See Fed. R. Civ. P. 55(b)(2). Mr. Medina does not appear to be any of the aforementioned persons, *see* Botta Decl. ¶ 12, so the Court may proceed with its analysis.

"The district court's decision whether to enter a default judgment is a discretionary one." *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980). Factors that a court may consider in exercising that discretion include:

> (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

*Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986).

A default judgment may be refused where the court determines no justifiable claim has been alleged or that a default judgment is inappropriate for other reasons. *See Draper v. Coombs*, 792 F.2d 915, 924 (9th Cir. 1986) (holding that district court did not abuse its discretion in denying default judgment when defendant's answer was late but did not prejudice plaintiff); *Aldabe*, 616 F.2d at 1092-93 (holding that district court did not abuse its discretion in denying default judgment against defendants who failed to answer because plaintiff's substantive claims lacked merit).

In the case at bar, the *Eitel* factors support a default judgment.

1.Possibility of Prejudice to Plaintiff

The first *Eitel* factor instructs a court to consider the possibility of prejudice to the plaintiff if default judgment were not granted. Here, Rey Rey would suffer prejudice if default judgment were not granted because it would lack other means to recover the money due. *See Elektra Entm't Group,*

*Inc. v. Crawford*, 226 F.R.D. 388, 392 (C.D. Cal. 2005) ("Plaintiffs would suffer prejudice if the default judgment is not entered because Plaintiffs would be denied the right to judicial resolution of the claims presented, and would be without other recourse for recovery."). Notably, Rey Rey alleged in its complaint that it has "repeatedly demanded" that Mr. Medina pay the money due but to no avail. Compl. ¶ 11. "The general rule of law is that upon default the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true." *Televideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917-18 (9th Cir. 1987) (internal quotation marks omitted).

### 2 &3.  Merits of Claim and Sufficiency of Complaint

"With regard to the second and third [*Eitel*] factors, the plaintiff is required to state a claim on which the [plaintiff] may recover." *Elektra*, 226 F.R.D. at 392 (internal quotation marks omitted). In its complaint, Rey Rey asserted four causes of action: (1) breach of contract, (2) enforcement of statutory trust provisions under PACA, (3) violation of PACA for failure to account and pay promptly, and (4) declaratory relief. Because Rey Rey's motion for default judgment does not seek declaratory relief, the Court shall evaluate the sufficiency of the first three causes of action, but not the fourth.

As to the first cause of action, the elements of a breach of contract are: (1) the existence of a contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) damages to plaintiff. *See Armstrong Petroleum Corp. v. Tri-Valley Oil & Gas Co.*, 116 Cal. App. 4th 1375, 1391 n.6 (2004). Here, Rey Rey has pleaded facts sufficient to make out a claim for breach of contract. The complaint states that the parties had an agreement by which Rey Rey sold and shipped perishable agricultural commodities to Mr. Medina in exchange for money, totaling $23,801. *See* Compl. ¶ 9. While Rey Rey performed its part of the agreement, Mr. Medina did not by failing to pay any part of the money due and owing, thus causing damages to Rey Rey. *See* Compl. ¶¶ 11-13.

///
///
///
///

Because the second and third causes of action arise from the same facts and are asserted pursuant to the same statute – *i.e.*, PACA – the two are considered together.[1] PACA was enacted to prevent unfair business practices and promote financial responsibility in the fresh fruit and produce industry. *See Sunkist Growers v. Fisher*, 104 F.3d 280, 282 (9th Cir. 1997). Under 7 U.S.C. § 499b of PACA, it is unlawful for any dealer "to fail or refuse truly and correctly to account and make full payment promptly in respect of any transaction in any [perishable agricultural] commodity to the person with whom such transaction is had." *Id.* § 499b(4). Furthermore, under § 499b, the perishable commodities or proceeds from the sale of those commodities must be held in trust by the dealer for the benefit of the unpaid seller until full payment is made, *see id.* § 499e(c)(2), and a failure to maintain the trust constitutes unlawful activity. *See id.* § 499b(4). Liability for either a failure to pay promptly and in full or a failure to maintain the statutory trust may be enforced by suit in any court of competent jurisdiction. *See id.* § 499e(b).

Rey Rey has adequately asserted a claim under PACA for failure to account and make full payment promptly. In its complaint, Rey Rey alleges that it is in the business of selling perishable agricultural commodities as defined by PACA, *see* Compl. ¶ 15; that Mr. Medina is engaged in the handling of produce in interstate and/or foreign commerce as a dealer subject to PACA, Compl. ¶ 7; that Rey Rey sold perishable agricultural commodities to Mr. Medina, *see* Compl. ¶ 9; that it "repeatedly demanded that [Mr. Medina] pay the amounts due" for the commodities, Compl. ¶ 11; but that, "[d]espite these demands, [Mr. Medina has] failed and refused to truly, correctly and accurately account for and make full payment of the proceeds of [the] transactions [between him and Rey Rey]." Compl. ¶ 23.

Based on the same allegations, Rey Rey has also adequately asserted a claim under PACA for failure to maintain the statutory trust. The Court notes that it is possible for an unpaid seller such as Rey Rey to lose the benefits of the statutory trust if it fails to give written notice to the dealer of intent to preserve the benefits of the trust. *See* 7 U.S.C. § 499e(c)(3)-(4). However, Rey Rey has

---

[1] The claim for breach of contract is not preempted by PACA, which does not "in any way abridge or alter the remedies now [on June 10, 1930] existing at common law or by statute." 7 U.S.C. § 499e(b).

alleged that it "has performed and fulfilled all duties required to preserve its trust benefits." Compl. ¶ 18.

Moreover, in addition to the allegations of the complaint, Rey Rey has provided evidence that it did give to Mr. Medina the requisite notice. PACA provides that "a licensee may use ordinary and usual billing or invoice statements to provide notice of the licensee's intent to preserve the trust," so long as the bill or invoice statement includes

> the information required by the last sentence of paragraph (3) [of § 499e(c)[2]] and contain on the face of the statement the following: "The perishable agricultural commodities listed on this invoice are sold subject to the statutory trust authorized by section 5(c) of the Perishable Agricultural Commodities Act, 1930 (7 U.S.C. 499e(c)). The seller of these commodities retains a trust claim over these commodities, all inventories of food or other products derived from these commodities, and any receivables or proceeds from the sale of these commodities until full payment is received."

7 U.S.C. § 499e(c)(4).

Rey Rey has submitted to the Court copies of the invoices that it sent to Mr. Medina on or about the date of each transaction. *See* Reynoso Decl., Ex. 1 (invoices). At the bottom of each invoice is the statement required above. As for the requirement that the invoices include the information required by the last sentence of § 499e(c)(3) – *i.e.*, the time of payment if different from the default payment terms provided in the regulations, *see* 7 C.F.R. § 46.2(aa)(5) ("within 10 days after the day on which the produce is accepted") – that too has been satisfied. The invoices indicate that all accounts should be paid "within thirty days" or a service charge of 18% per annum will be assessed. Reynoso Decl., Ex. 1 (invoices).

To summarize, based on the allegations in the complaint as well as the evidence in the record, Rey Rey has adequately pleaded claims for relief under PACA. The PACA claims provides a basis for federal jurisdiction over the instant case. *See* 7 U.S.C. § 499e(c)(5); 28 U.S.C. § 1331.

---

[2] The last sentence of § 499e(c)(3) is as follows: "When the parties expressly agree to a payment time period different from that established by the Secretary, a copy of any such agreement shall be filed in the records of each party to the transaction and the terms of payment shall be disclosed on invoices, accountings, and other documents relating to the transaction." 7 U.S.C. § 499(e)(c)(3); *see also* 7 C.F.R. § 46.46(e) ("Parties who elect to use different times for payment must reduce their agreement to writing before entering into the transaction and maintain a copy of their agreement in their records, and the times of payment must be disclosed on invoices, accountings, and other documents relating to the transaction.").

### 4. Sum of Money at Stake in Action

Pursuant to the fourth *Eitel* factor, "the court must consider the amount of money at stake in relation to the seriousness of Defendant's conduct." *Philip Morris USA, Inc. v. Castworld Prods., Inc.*, 219 F.R.D. 494, 500 (C.D. Cal. 2003) (internal quotation marks omitted). In the instant case, Rey Rey seeks damages in the amount of $23,801 as well as fees and costs in the amount of $2,542.09 and pre- and postjudgment interest at 18% per annum. *See* Mot. at 2-3. The damages sought by Rey Rey are specifically tailored to the wrongdoing of Mr. Medina – *i.e.*, Rey Rey asks only for that money which it was due for the perishable agricultural commodities sold to Mr. Medina. As for the fees, costs, and interest sought, the invoices that Rey Rey sent to Mr. Medina specify that "A SERVICE CHARGE OF 1 1/2% PER MONTH AT THE ANNUAL PERCENTAGE RATE OF 18% WILL BE CHARGED ON ALL ACCOUNTS NOT PAID WITHIN THIRTY DAYS. BUYER AGREES TO PAY REASONABLE ATTORNEY'S FEES IF COLLECTION IN [sic] NECESSARY." Reynoso Decl., Ex. 1 (invoices). The moneys sought herein are reasonable in relation to Rey Rey's claims.

### 5. Possibility of Dispute Concerning Material Facts

As noted above, upon default, all factual allegations of the complaint except those relating to damages are taken as true. *See Televideo*, 826 F.2d at 917-18. In the instant case, based on the entry of default, the Court must take all factual allegations in Rey Rey's complaint as true, and so it is unlikely that any genuine issue of material fact exists in this case. *See Elektra*, 226 F.R.D. at 393 (concluding that, "[b]ecause all allegations in a well-pleaded complaint are taken as true after the court clerk enters default judgment, there is no likelihood that any genuine issue of material fact exists"). Moreover, the allegations of the complaint are substantiated by documentary evidence.

### 6. Whether Default Was Due to Excusable Neglect

For this factor, a court will consider whether the defendant's failure to answer was due to excusable neglect. *See Eitel*, 728 F.2d at 1472 (nothing that the fact that parties were engaged in settlement discussions excused defendant from failing to answer). Here, it appears that Mr. Medina was properly notified of the complaint and yet he failed to respond. Mr. Medina likewise failed to respond to both Rey Rey's request for entry of default in spite of receiving notice of such. Thus,

based on the record before the Court, there is nothing to suggest that there is excusable neglect for Mr. Medina's failure to answer. *See Elektra*, 226 F.R.D. at 393 ("Due to the dual instances of notice to the Defendant [*i.e.*, notice of both the complaint and the motion for default judgment], as well as the extended period of time that has passed since entry of default by the clerk, the possibility of excusable neglect is remote.").

   7. <u>Policy Underlying Federal Rules of Civil Procedure Favoring Decision on Merits</u>

  Generally, default judgments are not favored because "cases should be decided upon their merits whenever reasonably possible." *Eitel*, 782 F.2d at 1472. However, Mr. Medina's failure to answer Rey Rey's complaint "makes a decision on the merits impractical, if not impossible. Under Fed. R. Civ. P. 55(a), termination of a case before hearing the merits is allowed whenever a defendant fails to defend an action. Thus, the preference to decide cases on the merits does not preclude a court from granting default judgment." *Pepsico, Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002) (internal quotation marks omitted); *see also Pepsico, Inc. v. Triunfo-Mex, Inc.*, 189 F.R.D. 431, 432 (C.D. Cal. 1999) (noting that courts, in applying the discretionary standard governing motions for default judgment, more often grant such motions rather than deny them).

   8. <u>Summary</u>

  Considering each of the seven *Eitel* factors, the Court concludes that the factors weigh in favor of a default judgment and so recommends that Rey Rey's motion for default judgment be granted.[3]

C. <u>Relief</u>

  Having concluded that default judgment is proper in the instant case, the Court must now determine what relief should be given Rey Rey. Rey Rey, as noted above, has requested damages in the amount of $23,801 as well as fees and costs in the amount of $2,542.09 and pre- and

---

[3] Rey Rey voluntarily dismissed (without prejudice) the only other defendant in this case, James Sanchez, on February 10, 2006. *See* Docket No. 8. Thus, the Court need not address the issue of whether a default judgment against less than all of the defendants in the case is appropriate. *See Shanghai Automation Instrument Co. v. Kuei*, 194 F. Supp. 2d 995, 1008-09 (N.D. Cal. 2001) (discussing issue).

1  postjudgment interest at 18% per annum. Rey Rey has the burden of "proving up" these amounts.
2  *See Board of Trustees of the Boilermaker Vacation Trust v. Skelly, Inc.*, 380 F. Supp. 2d 1222, 1226
3  (N.D. Cal. 2005) ("Plaintiff has the burden of proving damages through testimony or written
4  affidavit.").

   1.  <u>Damages</u>

Under PACA, a dealer who fails to pay promptly and in full or fails to maintain the statutory trust "shall be liable to the person or persons injured thereby for the full amount of damages . . . sustained in consequence of such violation." 7 U.S.C. § 499e(a). Rey Rey claims that it sustained damages in the amount of $23,801 and has submitted to the Court (1) the invoices it sent to Mr. Medina and (2) an account statement to support this claimed amount. *See* Reynoso Decl., Ex. 1 (invoices), Ex. 2 (account statement).

The Court concludes that, based on the evidence submitted, Rey Rey has demonstrated that it is entitled to at most $20,809 in damages. While Rey Rey claims that it should be awarded $23,801, the total reflected in the account statement, the actual invoices upon which the account statement is based total $20,809. Contrary to the account statement, Invoice No. 19979 reflects the amount due as $2,422.50, not $3,010.50; Invoice No. 20405 reflects the amount due as $645, not $3,109; Invoice No. 21461 reflects the amount due as $810, not $2,174; and Invoice No. 22127 reflects the amount due as $1,504, not $1,280.[4]

---

[4] The Court takes note that one of the invoices submitted by Rey Rey – more specifically, Invoice No. 22954, which reflects a sale worth $968 – does not appear to have been signed by Mr. Medina, and, therefore, one might argue that, pursuant to the statute of frauds provided for by the California Commercial Code, Rey Rey should not be entitled to collect this money as part of its damages award. *See* Cal. Comm. Code § 2201(1) (stating that "a contract for the sale of goods for the price of five hundred dollars ($ 500) or more is not enforceable by way of action or defense unless there is some writing sufficient to indicate that a contract for sale has been made between the parties *and signed by the party against whom enforcement is sought or by his or her authorized agent or broker*") (emphasis added).

This argument, however, is not persuasive for two reasons. First, the California Commercial Code specifies that, "[b]etween merchants if within a reasonable time a writing in confirmation of the contract and sufficient against the sender is received and the party receiving it has reason to know its contents, it satisfies the requirements of subdivision (1) against the party unless written notice of objection to its contents is given within 10 days after it is received." *Id.* § 2201(2). Rey Rey's president, Manuel Reynoso, states in his declaration that he sent each invoice to Mr. Medina: "On or about the date of each transaction, Plaintiff prepared and delivered to Defendant via U.S. Mail an invoice setting for[th] the terms of the subject sales transactions. None of the invoices were ever

### 2.     Attorney's Fees and Costs and Prejudgment Interest

In addition to damages, Rey Rey seeks attorney's fees and costs in the amount of $2,542.09 and prejudgment interest at 18% per annum. *See* Mot. at 2. Rey Rey asserts that it is entitled to fees, costs, and prejudgment interest because its "invoices contain language allowing it to recover [such]." Mot. at 2. More specifically, at the bottom of each invoice, there is the following language: "TERMS: PACA A SERVICE CHARGE OF 1 1/2% PER MONTH AT THE ANNUAL PERCENTAGE RATE OF 18% WILL BE CHARGED ON ALL ACCOUNTS NOT PAID WITHIN THIRTY DAYS. BUYER AGREES TO PAY REASONABLE ATTORNEY'S FEES IF COLLECTION IN [sic] NECESSARY." Reynoso Decl., Ex. 1 (invoices).

In *Middle Mountain Land & Produce, Inc. v. J.R. Simplot Co.*, 307 F.3d 1220 (9th Cir. 2002), the Ninth Circuit concluded that invoices and related communications can create a contractual right to attorney's fees, as well as prejudgment interest. If there is a contractual right to fees and/or interest, these items should be awarded under PACA since the statute provides for full payment of "the sums owing *in connection* with such transactions." 7 U.S.C. § 499e(c)(2) (emphasis added).

The first question for the Court is whether Rey Rey had a contractual right to fees and/or interest. The Court concludes that Rey Rey has provided sufficient evidence that it had such a contractual right. Rey Rey's president, Manuel Reynoso, states in his declaration that Rey Rey and Mr. Medina entered into various agreements for the sale of perishable agricultural commodities and that, for each agreement, Rey Rey sent an invoice that set forth the terms of the agreement. *See* Reynoso Decl. ¶¶ 8-9. As noted above, each invoice provides for fees and interest. All of the invoices (except one) appear to have been signed by Mr. Medina as "received."[5] The Court notes that, unlike attorney's fees, prejudgment interest may still be awarded, even absent a contractual

---

returned to Plaintiff as undelivered." Reynoso Decl. ¶ 9. Second, the above argument would be applicable to the breach-of-contract claim only; it is not clear what force it would have with respect to the PACA claims. *See, e.g.*, *United Potato Co. v. Burghard & Sons*, 18 F. Supp. 2d 894, 899 (N.D. Ill. 1998) (pointing out that, even if statute of frauds precluded a state law claim, PACA was intended to provide a remedy beyond state law). The Court concludes that Invoice No. 22954 is properly claimed.

[5] *See* note 4, *supra*.

10

right, "if such an award is necessary to protect the interests of PACA claimants." *Middle Mountain*, 307 F.3d at 1226.

As for the precise amount of fees and interest that should be awarded, the Court makes the following recommendation.

The amount of fees and costs sought by Rey Rey is reasonable because counsel claims only 7.1 hours of attorney work at $295 an hour (totaling $2,094.50) and costs for a filing fee, attorney service, and electronic research ($447.59).

As for prejudgment interest, the Court agrees with Rey Rey that a rate of 18% per annum is appropriate pursuant to the invoices. However, the Court does not agree with the calculation of interest by Rey Rey. Contrary to what Rey Rey argues, the due date for each "loan" should not be the date that the perishable agricultural commodities were sold, *i.e.*, the date listed at the top of each invoice. *See* Botta Decl., Ex. 2 (calculating interest due). Nor should the due date be 7 days after the date listed on the invoice, as suggested by the account statement submitted by Rey Rey. *See* Reynoso Decl., Ex. 2 (account statement). Rather, the due date for each "loan" should be 30 days after the date listed on the invoice because the invoice specifies that a service charge will be assessed "ON ALL ACCOUNTS NOT PAID WITHIN THIRTY DAYS."[6] Reynoso Decl., Ex. 1 (invoices). Accordingly, the Court recommends that interest in the amount of $4,343 (as of July 10, 2006) be awarded consistent with the chart below.

| Principal "Loan" Amount and Date | Due Date of "Loan" | Days Elapsed [as of July 10, 2006] | Interest Due Daily | Total Interest |
|---|---|---|---|---|
| $2,244 (4/21/05) | 5/21/05 | 365 + 10 + 30 + 10 = 415 | $1.1066[7] | $459.24 |

---

[6] As noted above, full and prompt payment under PACA is generally 10 days. *See* 7 C.F.R. § 46.2(aa)(5) ("'Full payment promptly,' for the purpose of determining violations of the Act, means: . . . Payment for produce purchased by a buyer, within 10 days after the day on which the produce is accepted."). "Parties who elect to use different times for payment must reduce their agreement to writing before entering into the transaction and maintain a copy of their agreement in their records, and the times of payment must be disclosed on invoices, accountings, and other documents relating to the transaction." *Id.* § 46.46(e). "[T]he party claiming the existence of such an agreement for time of payment shall have the burden of proving it." *Id.* § 46.2(aa)(11). In the case at bar, Rey Rey's invoices establish the parties' election to use 30 days as the grace period.

[7] ($2,244 x 18%) ÷ 365 = $1.1066.

11

| Principal "Loan" Amount and Date | Due Date of "Loan" | Days Elapsed [as of July 10, 2006] | Interest Due Daily | Total Interest |
|---|---|---|---|---|
| $2,422.50 (4/21/05) | 5/21/05 | 365 + 10 + 30 + 10 = 415 | $1.1947 | $495.80 |
| $645 (5/2/05) | 6/1/05 | 365 + 29 + 10 = 404 | $0.3181 | $128.51 |
| $232 (5/3/05) | 6/2/05 | 365 + 28 + 10 = 403 | $0.1144 | $46.10 |
| $2,332 (5/3/05) | 6/2/05 | 365 + 28 + 10 = 403 | $1.1500 | $463.45 |
| $3,922 (5/7/05) | 6/6/05 | 365 + 24 + 10 = 399 | $1.9341 | $771.71 |
| $107 (5/9/05) | 6/8/05 | 365 + 22 + 10 = 397 | $0.0528 | $20.96 |
| $1,574.50 (5/10/05) | 6/9/05 | 365 + 21 + 10 = 396 | $0.7765 | $307.49 |
| $2,174 (5/16/05) | 6/15/05 | 365 + 15 + 10 = 390 | $1.0721 | $418.12 |
| $4,048 (5/18/05) | 6/17/05 | 365 + 13 + 10 = 388 | $1.9963 | $774.56 |
| $1,504 (5/26/05) | 6/25/05 | 365 + 5 + 10 = 380 | $0.7417 | $281.85 |
| $968 (6/8/05) | 7/8/05 | 365 + 2 = 367 | $0.4774 | $175.21 |
| **TOTAL** | | | | **$4,343.00** |

3. <u>Postjudgment Interest</u>

Finally, Rey Rey asks that it be awarded not only prejudgment interest but also postjudgment interest, also at a rate of 18% per annum.

In federal court, postjudgment interest is governed by 28 U.S.C. § 1961. *See Citicorp Real Estate v. Smith*, 155 F.3d 1097, 1107 (9th Cir. 1998); *see also Rowe v. Marietta Corp.*, Nos. 97-5789, 97-5791, 97-5892, 1999 U.S. App. LEXIS 189, at *18-19 (6th Cir. Jan. 6, 1999) ("[P]ost-judgment interest on a federal civil judgment is governed by federal statute, regardless whether the underlying claim arises under federal or state law."). Section 1961 provides that "[s]uch interest shall be calculated from the date of the entry of the judgment, at a rate equal to the weekly

12

average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding the date of the judgment." 7 U.S.C. § 1961(a). Rey Rey does not explain why the federal statutory rate provided for by § 1961 should not be applied but presumably it is because the invoices referred to a rate of 18% per annum.

The Court concludes that the proper rate of postjudgment interest is governed by the 18% per annum rate stated in the invoices. In *Citicorp*, the Ninth Circuit acknowledged that parties can "contractually waive[] their right to have post-judgment interest calculated at the federal statutory rate." *Citicorp*, 155 F.3d at 1108. The court then determined that there had been a waiver because

> Citicorp requested "interest at the default rate set . . . in the Notes from March 1, 1991 to the date of entry of judgment *and, after judgment until collection*." The arbitrator's award contained similar language. The arbitrator's award ordered that interest would accrue at the per diem rate specified "until judgment or paid in full." Defendants stipulated to the arbitrator's award.

*Id.* (emphasis in original). The language in Rey Rey's invoices is not as explicit as that in *Citicorp*. Rey Rey's invoices stated that "A SERVICE CHARGE OF 1 1/2% PER MONTH AT THE ANNUAL PERCENTAGE RATE OF 18% WILL BE CHARGED ON ALL ACCOUNTS NOT PAID WITHIN THIRTY DAYS." Reynoso Decl., Ex. 1 (invoices). Nonetheless, the import of the language is reasonably clear. Interest typically accrues until payment. The Court finds that, in light of the invoice language, Mr. Medina waived postjudgment interest calculated at the federal statutory rate and implicitly agreed to the contractual rate of 18% per annum.

///
///
///
///
///
///
///
///
///

### III. RECOMMENDATION

For the foregoing reasons, the Court recommends that Rey Rey's motion for default judgment be granted but that it be awarded only (1) $20,809 in damages; (2) $2,542.09 in attorney's fees and costs; (3) $4,343 in prejudgment interest (as of July 10, 2006), and (4) postjudgment interest at the rate of 18% per annum.

The Court orders Rey Rey to immediately serve a copy of this report and recommendation on Mr. Medina.

Any party may file objections to this report and recommendation with the district judge within ten days after being served with a copy. See 28 U.S.C. § 636(b)(1)(B); Fed. R. Civ. P. 72(b); Civil L.R. 72-3.

Dated: July 10, 2006

_____
EDWARD M. CHEN
United States Magistrate Judge